# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL NO. 5:10CV110-RLV-DSC

| | |
|---|---|
| CAROL B. LAWRENCE,<br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br>Defendant. | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #8) and "Memorandum in Support ..." (document #9), both filed December 21, 2010; and the Defendant's "Motion for Summary Judgment" (document #13) and "Memorandum in Support... " (document #14), both filed March 17, 2011. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

Plaintiff filed her application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") on December 15, 2006, initially alleging that she became disabled on April 1, 2002. Plaintiff's application was denied initially and on reconsideration, and

a hearing was held on August 12, 2009 (Tr. 22-64). At the hearing, Plaintiff amended her alleged onset date to June 1, 2005. (Tr. 25-26).

On October 14, 2009, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr.5-21). In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. The ALJ also found that Plaintiff suffered from "Meniere's disease,[1] bipolar disorder, and anxiety," which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform light[3] work limited to routine and repetitive tasks, requiring no more than occasional balancing or climbing other than stairs, avoiding exposure to loud noises and hazardous environments such as dangerous machinery, and requiring no more than occasional contact with the public. (Tr. 12). The ALJ also found that Plaintiff could not perform her past relevant work, and that she was a "younger individual," as that term of art is used for Social Security purposes, with a high school education.[4]

---

[1] Meniere's disease is also known as recurrent aural vertigo, and includes symptoms of hearing loss, tinnitus, and vertgio. *Dorland's Illustrated Medical Dictionary* 1010 (28th ed. 1994) (*Dorland's*).

[2] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3] "Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

[4] The record shows that Plaintiff was 44 years-old on the date of the ALJ's decision.

The ALJ then correctly shifted the burden to the Secretary to show the existence of other jobs in the national economy which the Plaintiff could perform. In response to a hypothetical that factored in the above limitations, the Vocational Expert identified five light or sedentary jobs (cafeteria attendant, tobacco sampler, coupon recycler-II, surveillance system monitor, and weight inspector and tester) that the Plaintiff could perform and stated that more than 12, 500 of these jobs existed in North Carolina. Accordingly, the Vocational Expert's testimony provided substantial evidence that there were a significant number of jobs in the national economy that the Plaintiff could perform. (Tr. 17.)

By notice dated June 18, 2010, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on August 13, 2010. Plaintiff assigns error to the ALJ's evaluation of the opinion of her treating psychiatrist, Dr. Phyllis S. Atwell. See Plaintiff's "Memorandum in Support ..." at 4-22 (document #9). Plaintiff also assigns error to the ALJ's evaluation of the credibility of her subjective complaints, id. at 22-25, and his reference to Listings 12.05 (mental retardation) and 12.07 (somatoform disorders) instead of Listing 12.04 (bipolar disorder). Id. at 25. The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District

3

Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled," as

4

that term of art is defined for Social Security purposes.[5] Plaintiff's first assignment of error concerns the ALJ's evaluation of Dr. Atwell's opinion. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).[6] A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). A treating source's opinion that rests upon a claimant's less-than-candid subjective complaints is entitled to minimal probative value. See Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005). Indeed, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." Christian v. Apfel, No. 98-1673, 168 F.3d 481, 1998 WL 911720, at *2 (4th Cir. Dec. 31, 1998) (per

---

[5] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

[6] Plaintiff cites in part to an earlier standard of review that was overruled in Sullivan, supra, following an adoption of new rules by the Administration. See Document #9-1 at 13-14, citing Coffman v. Bowen, 829 F.2d 514, 517-518 (4th Cir. 1987) (treating physician's opinion entitled to "great weight," and can only be rejected if there is persuasive evidence to the contrary in the record); Millner v. Schweiker, 725 F.2d 243, 245-246 (4th Cir. 1984) (same).

curiam, unpublished) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1076-77 (7th Cir. 1992)) (internal citation omitted).

In an August 20, 2009 letter addressed to Plaintiff's counsel, Dr. Atwell opined that Plaintiff "is totally and permanently disabled from working in any gainful occupation." (Tr. 787). The ALJ noted Dr. Atwell's opinion in the hearing decision (Tr. 14), and concluded that her opinion was not entitled to controlling or substantial weight. (Tr. 18). In reaching this decision, the ALJ found that Dr. Atwell's opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques, nor was it consistent with the reports from other examining sources or the state agency physicians. (Tr. 18). The ALJ also determined that no other treating source had assessed limitations that were similar to those from Dr. Atwell. (Tr. 18).

As the ALJ properly concluded, Dr. Atwell's contemporaneous findings recorded in her treatment notes demonstrate that her objective findings are not consistent with a determination that Plaintiff was disabled. Specifically, during the relevant period, the doctor found the following: Plaintiff was not experiencing suicidal ideation (Tr. 449, 457, 493, 702, 704), or hallucinations/delusions (Tr. 449, 451, 455, 466, 488, 493, 501, 534, 702), her thoughts were logical/goal-directed/clear (Tr. 449, 455, 466, 514, 700, 714, 722), her speech was normal (Tr. 449, 451, 455-456, 466, 468, 475, 485, 488, 493, 495, 501, 509, 511, 514, 700, 702, 704, 707, 713-714, 717, 720, 722, 775, 777), her memory was intact to all spheres (Tr. 449, 466, 534, 720), she was alert and oriented to four spheres (Tr. 449, 466, 534, 702, 720, 775), her insight and judgment were very good (Tr. 449, 493), her affect was bright and full (Tr. 450, 455, 457, 466, 468, 475, 485, 506, 700, 702, 713-714, 717, 720, 775, 777), she had no tremor or abnormal movements (Tr. 451, 455, 466, 468, 485, 493, 501, 508, 700, 706-707, 713, 717, 720, 775, 777, 779), there was no sign of confusion or decreased memory (Tr. 451, 485, 506, 779), her mood was stable (Tr. 451, 455, 466,

481, 495, 699, 707), she was future oriented (Tr. 455, 501, 720), and she was not suffering any flight of ideas. (Tr. 488, 501). These findings constitute the doctor's observations throughout her four-year treatment of Plaintiff as they come from appointments on October 17, 2005, October 24, 2005, October 26, 2005, November 7, 2005, November 28, 2005, January 11, 2006, April 12, 2006, May 22, 2006, June 5, 2006, June 10, 2006, October 2, 2006, December 13, 2006, January 23, 2007, January 30, 2007, March 5, 2007, March 28, 2007, June 11, 2007, August 2, 2007, October 4, 2007, November 14, 2007, December 12, 2007, February 6, 2008, May 5, 2008, October 1, 2008, December 15, 2008, February 12, 2009, February 25, 2009, March 9, 2009, April 5, 2009, April 13, 2009, May 18, 2009, June 1, 2009, and June 25, 2009. (Tr. 449-451, 455-457, 466, 468, 475, 484-485, 488, 493, 495, 501, 506, 508-509, 511, 514, 534, 699-700, 702, 704, 706-707, 713-714, 717, 720, 722, 775, 777, 779, 783).

The findings that Plaintiff attributes to Dr. Atwell in her brief are generally Plaintiff's own reports of her symptoms to the doctor or reports made by third parties. They are not objective evidence that corroborates Dr. Atwell's opinion. (Tr. 447-448, 450, 452, 454, 460, 462, 468, 472, 474, 477, 480, 483, 488, 493, 496, 498-499, 506, 509, 511, 532, 700-701, 703-707, 709, 711, 713-715, 717, 719, 722, 731, 774-775, 777-781, 783). See Morris v. Barnhart, No. 03-1332, 2003 WL 22436040, at **4 (3d Cir. October 28, 2003) (holding that "the mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citing Craig, 76 F.3d at 590 n.2).

There is also substantial evidence in the record to support the ALJ's conclusion that Dr. Atwell's opinion was inconsistent with other examining sources. On June 6, 2006, Plaintiff was admitted to the hospital for bipolar depression (Tr. 202). However, even on in-patient admission, Dr. Yoder observed that she was alert and oriented to three spheres, her eye contact was good, her

7

speech was normal, her thought process was linear and goal-directed, she had no flight of ideas or tangentiality, her memory was grossly intact in all spheres, and her judgment and insight were fair. (Tr. 205). Dr. Ford also found on multiple occasions that Plaintiff was in no apparent distress, her speech was fluent, and she had no apparent difficulties with receptive communication. (Tr. 208-222). As for Plaintiff's GAF scores, while on admission her score was 20, at discharge her score was 55 (Tr. 202), which is not indicative of disability. This is evidenced by the fact that according to the *Diagnostic and Statistical Manual of Mental Disorders - Text Edition*, a GAF score of 55 denotes only moderate symptoms or moderate difficulty in social or occupational functioning, while a GAF score between 41 and 50 is indicative of an individual who is not able to keep a job. *Diagnostic and Statistical Manual of Mental Disorders - Text Revision* 34 (4th ed. 2000). Further, Dr. Hillman concluded on April 14, 2007, that Plaintiff denied suicidal ideation and psychosis, her speech was grossly normal, she was alert and oriented to three spheres, she could follow simple and complex commands well, her cognitive functioning was essentially within normal limits, and her bipolar disorder was well managed on her current medication. (Tr. 413-416). In addition, the state agency physicians determined that Plaintiff retained the mental capacity for simple, routine, repetitive tasks with minimal social demands. (Tr. 410, 611).

Accordingly, because the ALJ relied upon permissible reasons in rejecting Dr. Atwell's opinion, Plaintiff's assignment of error should be overruled. See Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178.

Plaintiff next argues that the ALJ's credibility assessment is not supported by substantial evidence. The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological

abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's Meniere's disease, bipolar disorder, and anxiety – which could be expected to produce some of the symptoms claimed by Plaintiff. Accordingly, the ALJ found Plaintiff to have met the first prong of the test. The ALJ then properly determined, however, that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record. (Tr. 16).

In reaching this determination, the ALJ initially noted that he found credible Plaintiff's statement that she could no longer work in a field that required her to be creative. (Tr. 17). The ALJ went on to find that Plaintiff's statements to the state agency and her testimony during the hearing were less credible. (Tr. 17). Specifically, the ALJ noted that when Plaintiff was asked directly if she had traveled lately, she responded that she had not. However, upon further questioning she reported that she had taken trips to Tampa and Daytona, Florida, Santa Fe, New Mexico, and the Caribbean. (Tr. 17). The ALJ then noted that Plaintiff was asked if she had taken any trips that

9

required flying, and she responded that several years ago she flew to Tampa, and had a manic attack. Upon further questioning, she conceded that she had also flown to New Mexico for an international arts festival. (Tr. 17). The ALJ also noted that the medical records reveal that Plaintiff was vacationing on the beach in South Carolina in July 2006. (Tr. 17). The ALJ concluded that while vacations and disability are not mutually exclusive, Plaintiff's decision to go on various travels suggests that she overstated her alleged symptoms and limitations. (Tr. 17). The ALJ also determined that Plaintiff did not give forthright testimony about her trips in her initial responses, which further detracts from her credibility. (Tr. 17). The ALJ added that Plaintiff's trips were by car and plane, despite her allegations that her Meniere's disease was worsened by confinement in small places. (Tr. 17).

In the various forms she submitted during the administrative process, Plaintiff made statements about her travel activities that also belie her subjective complaints. Specifically, Plaintiff reported on November 7, 2005, that her trip to the Virgin Islands went well. (Tr. 508, 512). Plaintiff stated three weeks later that she felt well, and was going to South Carolina on November 30, 2005, and then to Florida. (Tr. 506). Plaintiff returned to the beach in South Carolina in July 2006, and while she reported some problems and stopped taking Lamictal, she still planned to stay for an additional three to six days. (Tr. 483). Plaintiff went to Florida from July 18th to July 25, 2006, and reported that she enjoyed the trip, and maintained a positive mood. (Tr. 477, 481). Plaintiff reported that she was going to the Caribbean from December 22, 2006 to January 8, 2007. (Tr. 468). Plaintiff further reported that she went to Florida from March 7th to March 13, 2007, and while she had a panic attack on the flight down, her medication was helpful on the return trip. (Tr. 454, 456). Plaintiff added that on May 3, 2007, she had a panic attack on her drive to Asheville, but had not taken her medication, and was able to talk herself through the episode. (Tr. 452). Plaintiff

10

additionally stated on June 11, 2007, that she went bike riding on the beach, and would be taking a trip to Florida by herself from June 26th to June 30, 2007, which she later reported went well. (Tr. 447, 450). Lastly, Plaintiff reported taking trips to New Mexico (Tr. 29), New Orleans in February 2008 (Tr. 714) and Florida in March 2009. (Tr. 700).

The ALJ noted that the record revealed that Plaintiff made other inconsistent statements regarding issues relevant to her disability claim. (Tr. 17). First, Plaintiff noted in her application for disability benefits that she stopped working on April 1, 2002, but during her testimony she admitted to being self-employed in 2004, and working part-time for six months in an art gallery in 2008. None of those earnings were reflected in her certified earnings record. (Tr. 17). Plaintiff testified that outside her relationship with her housemate Linda McAllister and a few trips she took, she had no social life. However, she clearly would have engaged in some interpersonal contact while working at the art gallery. (Tr. 17). Plaintiff also reported that her memory and concentration were impaired, yet she was the executor of her mother's estate in 2005. (Tr. 17). The ALJ further found that Plaintiff had no difficulty understanding or responding to questions posed by the ALJ or her representative, and was able to provide detailed descriptions of her past work and her altercation with a police officer. (Tr. 17). The ALJ added that while Plaintiff stated at the hearing that she did not drink, that was inconsistent with the reports in her medical records. (Tr. 17). The ALJ also noted that Plaintiff testified at the hearing that her daily functioning was extremely limited, yet she reported to Dr. Brown that she exercised three times a week, did gardening and yard work twice a week, and performed many household chores. (Tr. 18).

The ALJ further noted that while Plaintiff stated that she had balance problems and fell on multiple occasions, these reports were not consistent with the medical evidence. (Tr. 18). The ALJ found that while Plaintiff reported balance problems, the medical evidence did not reflect the degree

11

of difficulty or the number of falls alleged, as only one significant fall was reported in the medical record. (Tr. 18). The ALJ also noted that Plaintiff alleged that she had severe anxiety when she was around crowds of people, yet she chose to fly quite a distance to an international arts festival, which was likely a large gathering. (Tr. 18). The ALJ added that Plaintiff also traveled to the Virgin Islands, where she would be surrounded by strangers during her trip and stay on the island. (Tr. 18).

This credibility determination is wholly within the authority of the ALJ. Since the ALJ identified specific evidence that formed the basis for his conclusion, the decision is supported by substantial evidence and should be affirmed. Craig, 76 F.3d at 589; Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

Finally, Plaintiff devotes one paragraph of her brief to assign error to the ALJ's reference to Listings 12.05 (mental retardation) and 12.07 (somatoform disorders) instead of Listing 12.04 (bipolar disorder) when he evaluated Plaintiff's mental and emotional impairments. Document #9 at 25. As Defendant points out in his brief, despite the erroneous Listing citation, the ALJ properly evaluated the evidence and found that Plaintiff had only moderate (that is, nondisabling) restrictions in activities of daily living, social functioning, and concentration, persistence, and pace with no episodes of decompensation. (Tr. 11). Accordingly, Plaintiff's claim would not have satisfied Listing 12.04, 12.05, or 12.07, and this assignment of error must be overruled.

Although the medical records establish that the Plaintiff experienced symptoms and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts found by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from, but was not disabled from working, by her combination of impairments.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical record and Plaintiff's credibility as well as his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #8) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #13) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; <u>and to the Honorable Richard L. Voorhees</u>.

**SO RECOMMENDED AND ORDERED**.

Signed: March 31, 2011

David S. Cayer
United States Magistrate Judge