# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CASE NO. 5:10-CV-110-RLV-DSC

| | |
|---|---|
| CAROL B. LAWRENCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on Plaintiff Lawrence's Motion for Summary Judgment (Doc. 8), filed December 21, 2010, and Defendant Commissioner's Motion for Summary Judgment (Doc. 13), filed March 17, 2011.

Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge David S. Cayer was designated to consider and recommend disposition of the aforesaid motions. In a Memorandum and Recommendation Opinion ("M & R"), filed March 31, 2011, the Magistrate Judge recommended that Plaintiff's Motion for Summary Judgment be denied, that Defendant's Motion for Summary Judgment be granted, and that the Commissioner's decision be affirmed. (Doc. 15.) Plaintiff, through counsel, filed a timely Objection to the Magistrate Judge's M & R on April 13, 2011 (Doc. 16), and Defendant filed a Reply to Plaintiff's objections on April 18, 2011 (Doc. 18). These motions are considered herein.

## I. INTRODUCTION

The Court adopts the uncontested Procedural History as set forth on pages one through three of Magistrate Judge Cayer's M & R.

1

## II. STANDARD OF REVIEW

The Federal Magistrate Act provides that a district court shall make a de novo determination of those portions of a magistrate judge's report or specific proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1) (2009); *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983). The Court's review of the Commissioner's final decision is limited to the following two issues: whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *See* 42 U.S.C. § 405(g) (2010); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). So long as a reasonable mind might accept as adequate the evidence in support of the Commissioner's decision, the Court should not reweigh the evidence or substitute its judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456 (4th Cir. 1990); *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## III. DISCUSSION

A. The Evaluation of Dr. Atwell's Opinion

Plaintiff contends that the Administrative Law Judge's ("ALJ's") unfavorable decision should be remanded to the Commissioner on multiple bases. First, she argues that the ALJ inappropriately evaluated or weighed the opinion of her treating psychiatrist, Dr. Phyllis S. Atwell. (Doc. 9 at 1, 4.) A treating physician's opinion, while generally given greater weight, need not necessarily be afforded controlling weight. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Such opinion as to the nature and severity of the alleged impairment is entitled to controlling weight only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques *and* is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2011); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

In this sequential analysis, the ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p. If not, the inquiry at this stage is complete, and the opinion is not entitled to controlling weight. But if the opinion is well supported, the ALJ must then confirm that it is consistent with other substantial evidence in the record. *Id.* Because section 404.1527(d) establishes a conjunctive test, a deficiency in either respect will render the treating source's opinion unentitled to controlling weight.[1]

Here, the ALJ refused to give Dr. Atwell's opinion either controlling or substantial weight on the grounds that "it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the reports from the other sources who have examined the claimant." (Doc. 6-3 at 19.) Because Dr. Atwell's opinion and much of her clinical data refer to Claimant's subjective complaints, which are also found elsewhere in the record, there is room for overlap in the application of section 404.1527(d)'s two prongs. As to the first prong, the ALJ determined that many of Dr. Atwell's clinical findings are inconsistent with her opinion letter. (Doc. 6-3 at 14–15.) The Magistrate Judge properly found this determination to be supported by substantial and objective evidence, listing in further detail points of discrepancy between the substance of the opinion letter and the subjective complaints

---

[1] The ALJ also rightfully treated as non-dispositive Dr. Atwell's conclusion that Claimant is "totally and permanently disabled from work in any gainful occupation," as final responsibility for determining the ultimate issue of disability is reserved to the Commissioner. (Doc. 6-22 at 21; Doc. 6-3 at 19); 20 C.F.R. § 404.1527(e). Claimant makes much of this, claiming the Magistrate Judge confused this section 404.1527(e) issue with the section 404.1527(d) inquiries. (Doc. 16 at 3.) However, particularly in light of the Magistrate Judge's efforts to outline the various inconsistencies between Dr. Atwell's treatment records and opinion letter, it is evident that the Magistrate Judge committed no such error. (*See* Doc. 15 at 6–8.)

3

and objective observations noted within the treatment records.[2] (*See* Doc. 15 at 6–7.) As "[t]he findings that Plaintiff attributes to Dr. Atwell in her brief are generally Plaintiff's own reports of

---

[2] The Court adopts these points:

> [D]uring the relevant period, [Dr. Atwell] found [that] Plaintiff was not experiencing suicidal ideation (Tr. 449, 457, 493, 702, 704), or hallucinations/delusions (Tr. 449, 451, 455, 466, 488, 493, 501, 534, 702), her thoughts were logical/goal-directed/clear (Tr. 449, 455, 466, 514, 700, 714, 722), her speech was normal (Tr. 449, 451, 455-456, 466, 468, 475, 485, 488, 493, 495, 501, 509, 511, 514, 700, 702, 704, 707, 713-714, 717, 720, 722, 775, 777), her memory was intact to all spheres (Tr. 449, 466, 534, 720), she was alert and oriented to four spheres (Tr. 449, 466, 534, 702, 720, 775), her insight and judgment were very good (Tr. 449, 493), her affect was bright and full (Tr. 450, 455, 457, 466, 468, 475, 485, 506, 700, 702, 713-714, 717, 720, 775, 777), she had no tremor or abnormal movements (Tr. 451, 455, 466, 468, 485, 493, 501, 508, 700, 706-707, 713, 717, 720, 775, 777, 779), there was no sign of confusion or decreased memory (Tr. 451, 485, 506, 779), her mood was stable (Tr. 451, 455, 466, 481, 495, 699, 707), she was future oriented (Tr. 455, 501, 720), and she was not suffering any flight of ideas. (Tr. 488, 501). These findings constitute the doctor's observations throughout her four-year treatment of Plaintiff as they come from appointments on October 17, 2005, October 24, 2005, October 26, 2005, November 7, 2005, November 28, 2005, January 11, 2006, April 12, 2006, May 22, 2006, June 5, 2006, June 10, 2006, October 2, 2006, December 13, 2006, January 23, 2007, January 30, 2007, March 5, 2007, March 28, 2007, June 11, 2007, August 2, 2007, October 4, 2007, November 14, 2007, December 12, 2007, February 6, 2008, May 5, 2008, October 1, 2008, December 15, 2008, February 12, 2009, February 25, 2009, March 9, 2009, April 5, 2009, April 13, 2009, May 18, 2009, June 1, 2009, and June 25, 2009. (Tr. 449-451, 455-457, 466, 468, 475, 484-485, 488, 493, 495, 501, 506, 508-509, 511, 514, 534, 699-700, 702, 704, 706-707, 713-714, 717, 720, 722, 775, 777, 779, 783).
>
> The findings that Plaintiff attributes to Dr. Atwell in her brief are generally Plaintiff's own reports of her symptoms to the doctor or reports made by third parties. They are not objective evidence that corroborates Dr. Atwell's opinion. (Tr. 447-448, 450, 452, 454, 460, 462, 468, 472, 474, 477, 480, 483, 488, 493, 496, 498-499, 506, 509, 511, 532, 700-701, 703-707, 709, 711, 713-715, 717, 719, 722, 731, 774-775, 777-781, 783).

(Doc. 15 at 6–7.) The Court appreciates Claimant's appropriate remarks that bipolar disorder is not a static condition, bearing symptoms consistent across time. (Doc. 16 at 8–9.) In Claimant's case, manic and depressive episodes appear to alternate rapidly. However, the record is simply not sufficiently well developed in Claimant's favor to warrant a determination that the Commissioner's decision is not supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("The issue before us, therefore, is not whether [Claimant] is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."). Should Claimant's case develop further, she is of course free to refile.

her symptoms to the doctor or reports made by third parties[, and] not objective evidence . . . ," the ALJ did not err in determining that Dr. Atwell's opinion letter was not well supported by her own clinical data. (Doc. 15 at 7.) A treating source's opinion that rests upon a claimant's less-than-candid subjective complaints is of discounted probative value.[3] *See* SSR 96-7p; *cf. Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion." (citing *Craig*, 76 F.3d at 590 n.2)).

As to the second prong, the ALJ concluded that Dr. Atwell's opinion was inconsistent with other examining sources. (Doc. 6-3 at 19–20.) The Magistrate Judge echoed and bolstered the ALJ's findings:

> On June 6, 2006, Plaintiff was admitted to the hospital for bipolar depression (Tr. 202). However, even on in-patient admission, Dr. Yoder observed that she was alert and oriented to three spheres, her eye contact was good, her speech was normal, her thought process was linear and goal-directed, she had no flight of ideas or tangentiality, her memory was grossly intact in all spheres, and her judgment and insight were fair. (Tr. 205). Dr. Ford also found on multiple occasions that Plaintiff was in no apparent distress, her speech was fluent, and she had no apparent difficulties with receptive communication. (Tr. 208–22[; Doc. 6-3 at 15]). As for Plaintiff's GAF scores, while on admission her score was 20, at discharge her score was 55 (Tr. 202), which is not indicative of disability.[ (Doc. 6-3 at 14.)] This is evidenced by the fact that . . . a GAF score of 55 denotes only moderate symptoms or moderate difficulty in social or occupational functioning, while a GAF score between 41 and 50 is indicative of an individual who is not able to keep a job. *Diagnostic and Statistical Manual of Mental*

---

[3] Claimant cites *Ryan v. Commissioner of Social Security*, 528 F.3d 1194 (9th Cir. 2008), in support of her argument that the ALJ did not provide clear and convincing reasons for rejecting Dr. Atwell's opinion by questioning the credibility of Claimant's complaints. Here, however, given the dearth of objective evidence, the record suggests that Dr. Atwell "relied on [Claimant's subjective] descriptions more heavily than [her own objective] observations in reaching the conclusion that [Claimant is] incapable of maintaining a regular work schedule," in contrast with the record presented in *Ryan*. *Id.* at 1199 (citation omitted). Although Dr. Atwell did not discredit Claimant's complaints, her ultimate opinion was not adequately supported with her own observations for the purpose of qualifying Claimant for Social Security disability benefits. *See id.* (citation omitted).

5

*Disorders: Text Revision* 34 (4th ed. 2000). Further, Dr. Hillman concluded on April 14, 2007, that Plaintiff denied suicidal ideation and psychosis, her speech was grossly normal, she was alert and oriented to three spheres, she could follow simple and complex commands well, her cognitive functioning was essentially within normal limits, and her bipolar disorder was well managed on her current medication. (Tr. 413-416). In addition, the state agency physicians determined that Plaintiff retained the mental capacity for simple, routine, repetitive tasks with minimal social demands. (Tr. 410, 611[; Doc. 6-3 at 19–20]).

(Doc. 15 at 7–8.) Therefore, sufficient evidence justifies the ALJ's decision not to afford Dr. Atwell's opinion controlling weight.

In the event controlling weight is not given, the ALJ is to consider the following criteria: examining relationship, treatment relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. § 404.1527(d). While the ALJ must consider all of these factors, Social Security Ruling 96-2p states that the duty of explanation imposed is "[to] give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion." The explanation "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. The ALJ's explanatory obligation under section 404.1527(d) does not therefore include setting forth a factor-by-factor analysis in every ruling that bears upon the weight given to a treating source's medical opinion.[4]

---

[4] Regarding this distinction between "consideration" and "articulation," Claimant cites no case law, and this Court has found none, requiring an ALJ's decision expressly to apply each of the six relevant factors in deciding what weight to give a medical opinion. To the contrary, where the lens through which the ALJ considers the section 404.1527(d) factors is shaped by the "critical" factor of the claimant's mendacity, treatment- and physician-related regulatory factors lose relevance and may not be worthy of articulation. *Anderson v. Astrue*, 319 F. App'x 712, 718 n.2 (10th Cir. Apr. 3, 2009); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors . . . does not prevent this court from according his decision meaningful review."); *Brown v. Barnhart*, 298 F.Supp.2d 773, 792 (E.D. Wis. 2004) (holding that there is no *articulation* requirement for each and every factor). The ALJ must articulate his or her assessment of the evidence only to the extent that the

As the Magistrate Judge discussed, the ALJ gave sufficient reasons for affording Dr. Atwell's opinion less-than-substantial weight, including the discounted reliability of Claimant's subjective complaints, the lack of support for the opinion in Dr. Atwell's clinical findings and notes, and the inconsistencies between Dr. Atwell's opinion and other evidence in the record. Because the ALJ gave specific reasons for not giving Dr. Atwell's opinion controlling weight, and because these reasons are permissible under section 404.1527(d) and supported by the record, the ALJ's rationale is adequate, and it was not error to fail to expressly discuss factors one, three, and five.

Here, the ALJ's opinion indicates that all section 404.1527(d) factors were considered. Beyond simply stating that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527" (Doc. 6-3 at 13), the ALJ noted facts related to each element and indicative of a full awareness of the record. The ALJ discussed Dr. Atwell's examining relationship and specialization, and the nature of her treatment relationship with Claimant (Doc. 6-3 at 13–14) (noting that Claimant had "received psychological counseling" from Dr. Atwell over a number of years and acknowledging Dr. Atwell as Claimant's "psychiatrist," a title with clear academic and residency-related implications), as well as the supportability of Dr. Atwell's opinion (Doc. 6-3 at 14–15) (noting some of the subjective and objective evidence relating to the opinion).

B. The Evaluation of Plaintiff's Subjective Complaints

Additionally, Plaintiff assigns error to the ALJ's evaluation of the credibility of her

---

reviewing court is assured that the important evidence was considered and is enabled to trace the path of the ALJ's reasoning. *See Warren v. Astrue*, No. 5:08-149, 2009 WL 1392898, at *3 (E.D.N.C. May 18, 2009); *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (citation omitted).

subjective complaints. (Doc. 9 at 1, 22–25.) It is the ALJ's duty to make credibility decisions. 20 C.F.R. §§ 404.1529, 416.929 (2011). Once the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms alleged by the claimant has been established, "the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator[, while considering the entire case record,] to make a finding about the credibility of the individual's statements about the symptom[s] and [their] functional effects." SSR 96-7p.

Here, the ALJ properly evaluated Claimant's subjective complaints. First, the ALJ found Claimant to be suffering from medically determinable impairments—Ménière's disease, bipolar disorder, and anxiety. (Doc. 6-3 at 12.) Following this, the ALJ properly determined that Claimant's statements about her symptoms and their functional effects were not fully credible, as they were not consistent with the objective evidence in the record. (Doc. 6-3 at 17.)

In reaching this determination, the ALJ initially noted that he found credible Plaintiff's statement that she could no longer work in a field that required her to be creative. (Doc. 6-3 at 18.) The ALJ went on to find that Plaintiff's statements to the state agency and her testimony during the hearing were less credible. (Doc. 6-3 at 18.) Specifically, the ALJ noted that when Plaintiff was asked directly if she had traveled lately, she responded that she had not. However, upon further questioning she reported that she had taken trips to Tampa and Daytona, Florida, Santa Fe, New Mexico, and the Caribbean. (Doc. 6-3 at 18.) The ALJ then noted that Plaintiff was asked if she had taken any trips that required flying, and she responded that several years ago she flew to Tampa and had a manic attack. Upon further questioning, she conceded that she had also flown to New Mexico for an international arts festival. (Doc. 6-3 at 18.) The ALJ also

8

noted that the medical records reveal that Plaintiff was vacationing on the beach in South Carolina in July 2006. (Doc. 6-3 at 18.) The ALJ concluded that while vacations and disability are not mutually exclusive, Plaintiff's decision to go on various travels suggests that she overstated her alleged symptoms and limitations. (Doc. 6-3 at 18.) The ALJ also determined that Plaintiff did not give forthright testimony about her trips in her initial responses, which further undermines her credibility. (Doc. 6-3 at 18.) The ALJ added that Plaintiff's trips were by car and plane, despite her allegations that her Ménière's disease was worsened by confinement in small places. (Doc. 6-3 at 18.)

In the various forms she submitted during the administrative process, Plaintiff made statements about her travel activities that also belie her subjective complaints. Specifically, Plaintiff reported on November 7, 2005, that her trip to the Virgin Islands went well. (Doc. 6-15 at 21, 25.) Plaintiff stated three weeks later that she felt well and would be going to South Carolina on November 30, 2005, and then to Florida. (Doc. 6-15 at 19.) Plaintiff returned to the beach in South Carolina in July 2006, and while she reported some problems and stopped taking Lamictal, she still planned to stay for an additional three to six days. (Doc. 6-14 at 59.) Plaintiff went to Florida from July 18 to July 25, 2006, and reported that she enjoyed the trip and maintained a positive mood. (Doc. 6-14 at 53, 57.) Plaintiff reported that she was going to the Caribbean from December 22, 2006, to January 8, 2007. (Doc. 6-14 at 44.) Plaintiff further reported that she went to Florida from March 7 to March 13, 2007, and while she had a panic attack on the flight down, her medication was helpful on the return trip. (Doc. 6-14 at 30, 32.) Plaintiff added that on May 3, 2007, she had a "limited" panic attack during her drive to Asheville, but had not taken her medication and was nonetheless able to talk herself through the episode. (Doc. 6-14 at 28.) Plaintiff additionally stated on June 11, 2007, that she went bike

9

riding on the beach the day before and would be taking a trip to Florida by herself from June 26 to June 30, 2007, which she later reported went well. (Doc. 6-14 at 23, 26.) Lastly, Plaintiff reported taking trips to New Mexico (Doc. 6-3 at 30), to New Orleans in February 2008 (Doc. 6-20 at 23), and to Florida in March 2009 (Doc. 6-20 at 9).

      The ALJ noted that the record revealed that Plaintiff made other inconsistent statements regarding issues relevant to her disability claim. (Doc. 6-3 at 18.) First, Plaintiff noted in her application for disability benefits that she stopped working on April 1, 2002, but during her testimony she admitted to being self-employed in 2004 and working part-time for six months in an art gallery in 2008. None of those earnings were reflected in her certified earnings record. (Doc. 6-3 at 18.) Plaintiff testified that outside of her relationship with her housemate Linda McAllister and a few trips she took, she had no social life. However, she clearly would have engaged in some interpersonal contact while working at the art gallery. (Doc. 6-3 at 18.) Plaintiff also reported that her memory and concentration were impaired, yet she was the executor of her mother's estate in 2005. (Doc. 6-3 at 18.) The ALJ further found that Plaintiff had no difficulty understanding or responding to questions posed by the ALJ or her representative, and was able to provide detailed descriptions of her past work and her altercation with a police officer. (Doc. 6-3 at 18.) The ALJ added that Plaintiff's statement at the hearing that she did not drink was inconsistent with the reports in her medical records. (Doc. 6-3 at 18.) The ALJ also noted that while Plaintiff testified that her daily functioning was extremely limited, she reported to Dr. Brown that she exercised three times a week, did gardening and yard work twice a week, and performed many household chores. (Doc. 6-3 at 19.)

      The ALJ further noted that Plaintiff's reports of balance problems and falling on multiple occasions were not consistent with the medical evidence. (Doc. 6-3 at 19.) Such evidence did not

reflect the degree of balancing difficulty or the number of falls alleged, as only one significant fall was reported in the medical record. (Doc. 6-3 at 19.) The ALJ also took note of Plaintiff's claim of severe anxiety when around crowds of people, yet she chose to fly quite a distance to an international arts festival, which was likely a large gathering. (Doc. 6-3 at 19.) The ALJ added that Plaintiff's travel to the Virgin Islands would entail exposure to a great number of strangers during her flights and stay. (Doc. 6-3 at 19.)

To reiterate the language chosen by the Magistrate Judge, this credibility determination is wholly within the authority of the ALJ. Since the ALJ identified adequate and specific evidence forming the basis for his conclusion, the decision is supported by substantial evidence and should be affirmed. 20 C.F.R § 1529.

C. The Three-Step Determination

Finally, Plaintiff assigns error to the ALJ's reference to Listings 12.05 (mental retardation) and 12.07 (somatoform disorders) rather than Listing 12.04 (bipolar disorder). (Doc. 9 at 1, 25.) Despite this erroneous Listing citation, the ALJ properly evaluated the evidence and found that Plaintiff had only moderate (nondisabling) restrictions in activities of daily living, social functioning, and concentration, persistence, and pace, with no episodes of decompensation. (Doc. 6-3 at 12); *see* 20 C.F.R. Part 404, Subpart P, Appendix I, Rule 12.04 (2008). Accordingly, Plaintiff could not have satisfied any of the Listings mentioned, and there is no need for "a remand for at least explanatory findings . . . ." (Doc. 16 at 14.)

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 8) be **DENIED**; that Defendant's Motion for Summary Judgment (Doc. 13) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

Signed: December 29, 2011

*[Signature: Richard L. Voorhees]*

Richard L. Voorhees
United States District Judge